# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN FLOURNOY,<br><br>　　　　　　　　　Petitioner,<br>vs.<br><br>LARRY SMALL, Warden,<br><br>　　　　　　　　　Respondent. | CASE NO. 08cv2298-IEG(POR)<br><br>Order Adopting Report and Recommendation; Denying Petition for Writ of Habeas Corpus; Granting in Part Motion for Certificate of Appealability |

Petitioner Benjamin Flournoy, a California state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his February 27, 2006 conviction for assault with intent to commit rape and forcible rape in San Diego County Superior Court Case No. SCD186632.  On June 14, 2010, Magistrate Judge Porter filed a report and recommendation ("R&R"), recommending the Court deny the petition.  Flournoy filed objections on July 8, 2010 and supplemental objections on August 4, 2010.

Upon review, for the reasons explained herein, the Court rejects Flournoy's objections to Magistrate Judge Porter's well-reasoned R&R, and denies the Petition.

## *Factual Background*

The factual background is set forth in full in the R&R and need not be repeated herein.[1]

---

[1] These findings of historical fact, taken from the opinion of the California Court of Appeal [Lodgment No. 1, App. 1, at 3-11], are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

1  The Court will provide a short summary. Flournoy met the victim, L.M., in late October of 2003
2  while L.M. was waiting for a bus at the corner of Ninth Street and Broadway in downtown San
3  Diego. Flournoy and L.M. met again at the same corner the following day. Flournoy wrote his
4  telephone number on a piece of paper and put it among L.M.'s books, where she later found it.

5  L.M. called Flournoy a few days later and agreed to meet him downtown. While they
6  walked around downtown, L.M. allowed Flournoy to hold her hand but would not allow him to
7  kiss her.

8  On October 30, 2003, Flournoy called L.M. and invited her to come watch a basketball
9  game at his apartment. They met at First Street and Broadway and went to Flournoy's apartment
10 at J Street Inn. L.M. brought a duffel bag with some school books. Flournoy's studio apartment
11 was furnished with a bed and a small futon. Flournoy and L.M. sat on the futon and watched
12 television. Flournoy then went to the bathroom, changed into his pajamas, and went to bed
13 because he had to get up early the next morning. L.M. continued to watch television, and missed
14 her last bus. Because she did not have money for a cab, L.M. decided to wait until she could catch
15 a bus, and laid down on the futon. Because the futon was too small, around 2:00 a.m., L.M. laid
16 down fully clothed on top of the covers on Flournoy's bed. When she got cold, L.M. climbed
17 under the covers and fell asleep.

18 L.M. was awakened by Flournoy on top of her. Her shorts were around her ankles and her
19 shirt and sweatshirt were pulled up. Flournoy then raped her. L.M. was ultimately able to get
20 Flournoy off her and left his apartment crying. She was eventually able to catch a bus back home.

21 Once at home, without showering or changing clothes, L.M. went to Mercy Hospital
22 because her ovaries had been hurting for several days. Once at the Hospital, L.M. told a nurse and
23 a doctor she had been raped in an alley behind her apartment by someone she did not know. L.M.
24 told police the same story when they arrived at the hospital. Upon physical exam, registered nurse
25 Shirley Odum found abrasions to L.M.'s genitals consistent with blunt-force trauma but could not
26 determine if they were from consensual or nonconsensual intercourse.

27 L.M. told a friend that Flournoy raped her. L.M. also told her aunt she had been raped but
28 initially did not identify her attacker. L.M. later told her aunt what happened at Flournoy's

1  apartment. L.M. eventually called San Diego Police Detective Mike Holden and told him
2  Flournoy raped her.
3        When Detective Holden contacted Flournoy, Flournoy denied knowing L.M. Flournoy
4  voluntarily provided a DNA sample, which matched DNA recovered from the swab taken of
5  L.M.'s breast. Flournoy's DNA also matched two sperm cells recovered from a swab of L.M.'s
6  external genital area. Detective Holden obtained a search warrant for Flournoy's apartment, and
7  found several items of L.M.'s personal property.
8        At trial, two witnesses testified that Flournoy, at the time of the rape, had a sofa in his
9  apartment which was large enough for a grown man to stretch out on. Witness Jessica Gomez, a
10 former friend of both L.M. and Flournoy's sister, testified that L.M. told her she took off all her
11 clothes except her bra and underwear before climbing into bed with Flournoy. A forensic nurse
12 testified, based upon her review of the reports from L.M.'s examination, that the abrasions L.M.
13 suffered were "minor" and consistent with consensual intercourse. Defense counsel argued,
14 during closing, that Flournoy reasonably misinterpreted L.M.'s acts as consent to have intercourse.

15                         ***Procedural History***

16       The San Diego County District Attorney charged Flournoy with one count of forcible rape
17 and one count of assault with intent to commit rape. [Lodgment No. 1, Vol. 1, at 1-2.] The
18 information also alleged Flournoy had suffered three serious felony prior convictions and three
19 "strike" prior convictions. [Id., at 2-3.]
20       Following a jury trial, Flournoy was convicted of both counts. Flournoy admitted he had
21 suffered the prior convictions as alleged in the information. [Lodgment No. 3, Vol. 8, at 1219-21.]
22 The trial court sentenced Flournoy to twenty-five years to life, and to five years for each of the
23 serious felony prior convictions. [Lodgment No. 3, Vol. 9, at 1252.]
24       Flournoy appealed to the California Court of Appeal, which affirmed the conviction in an
25 unpublished written opinion. [Lodgment Nos. 5 and 6; Lodgment No. 1, App. A.] Flournoy filed
26 a petition for review in the California Supreme Court, which was denied without citation to
27 authority. [Pet. Exh. C.] Flournoy then filed a petition for a writ of habeas corpus with the
28 California Supreme Court, which was denied by citation to *In re Waltreus* (1965), 62, Cal. 2d 218.

[Pet. Exh. A and C.]

The current petition was filed on December 10, 2008. Flournoy raises five grounds for relief: (1) the trial court violated his Sixth Amendment confrontation rights by permitting criminalist Amy Rogala to testify about DNA evidence contained in reports prepared by another criminalist, Adam Dutra; (2) his trial and appellate counsel were constitutionally ineffective, in violation of his Sixth Amendment rights; (3) the trial court's admission of testimony by L.M's boss Cherrie Johnson, about statements L.M. made to her, violated due process and his right to a fair trial; (4) the trial court's admission of testimony by L.M's aunt, about statements L.M. made to her, violated due process and his right to a fair trial; and (5) cumulative trial errors produced a substantially injurious effect or influence on the jury's verdict. Respondent filed an Answer on March 19, 2009, and Flournoy filed a Traverse on September 15, 2009. Magistrate Judge Porter filed her Report and Recommendation on June 14, 2010. Flournoy initially filed objections on July 8, 2010, and thereafter filed supplemental objections on August 4, 2010.

### *Standard of Review*

The R&R properly sets forth the standard of review applicable to this habeas corpus petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). Additionally, the state court's factual determinations are presumed correct, and Flournoy carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (West 2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76); accord Hines v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer, 538 U.S. at 72.

### *Discussion*

#### *1.     Admission of Testimony Regarding the DNA Tests*

As his first claim for relief, Flournoy argues the trial court violated his Sixth Amendment confrontation rights by permitting criminalist Amy Rogala to testify about DNA evidence contained in reports prepared by another criminalist, Adam Dutra. In rejecting Flournoy's claim,

1  the California Court of Appeal first noted the issue was waived because counsel failed to object on
2  confrontation clause grounds at the time of trial.  On the merits, the California Court of Appeal
3  concluded the trial court's admission of Rogala's testimony did not violate the confrontation
4  clause because the Dutra reports on which Rogala relied were business records upon which Rogala
5  was entitled to rely in rendering his expert opinion, and were not "testimonial hearsay."
6  [Lodgment No. 1, App. A, at 18-21.]

7  In the R&R, Magistrate Judge Porter first concluded the claim was procedurally defaulted
8  because counsel did not make a timely confrontation clause objection.  Even assuming the Court
9  could address the claim, Magistrate Judge Porter concluded the United States Supreme Court's
10 decision in Melendez-Diaz v. Massachusetts, ___ U.S. ___, 127 S. Ct. 2527 (2009), could not be
11 applied to grant Flournoy relief under the doctrine set forth in Teague v. Lane, 489 U.S. 288
12 (1989).

13 In his objections filed on July 8, 2010, Flournoy argues he showed cause and prejudice for
14 any procedural default, and that imposing a procedural bar will result in a fundamental miscarriage
15 of justice.  Flournoy objects that the magistrate judge improperly imposed a Teague bar *sua sponte*
16 and that the rule set forth in Melendez-Diaz is not a "new rule."  In his supplemental objections,
17 filed August 4, 2010, Flournoy argues the magistrate judge improperly gave deference to the
18 California Court of Appeal's determination that Rogala's testimony regarding Dutra's reports was
19 not hearsay.[2]

20 (a)  Procedural Default

21 Because Flournoy's trial counsel failed to object to admission of Rogala's testimony on
22 confrontation clause grounds, an adequate and independent ground bars this Court from reviewing
23 the constitutional claim.  Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003) (setting forth the
24 respective burdens on the state and petitioner to plead and rebut procedural default) ; Paulino v.
25 Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (finding claim procedurally defaulted by imposition
26 of the contemporaneous objection rule).  Flournoy does not dispute Magistrate Judge Porter's

27

28  [2]Flournoy also supplements his procedural bar and Teague arguments as set out in his initial objections.

1  determination that his claim regarding the admission of Rogala's testimony is procedurally
2  defaulted.  Instead, Flournoy argues he has shown cause and prejudice for the default and that
3  imposing a bar will result in a fundamental miscarriage of justice.

4       In order to demonstrate cause, Flournoy must demonstrate some "objective factor" that
5  precluded him from raising his claims in state court, such as interference by state officials or
6  constitutionally ineffective counsel.  McClesky v. Zant, 499 U.S. 467, 493-94 (1991). In order to
7  demonstrate prejudice sufficient to excuse a procedural bar, Flournoy must show "actual harm
8  resulting from the alleged error."  Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998).  Here, the
9  cause and prejudice inquiry are intertwined with the discussion of whether Flournoy received
10 constitutionally effective assistance of counsel and whether Flournoy can demonstrate his
11 counsel's failure to object actually harmed him.  As discussed below, the Court concludes
12 Flournoy received the effective assistance of counsel, and the trial and appellate courts would have
13 rejected any confrontation clause objection to admission of the evidence.  Therefore, Flournoy has
14 not demonstrated cause or prejudice.

15      Flournoy also has not shown that failure to consider his claim will result in a fundamental
16 miscarriage of justice.  As explained by Magistrate Judge Porter in the R&R, the Supreme Court
17 has limited the "miscarriage of justice" exception to petitioners who can show that "a
18 constitutional violation has probably resulted in the conviction of one who is actually innocent."
19 Schlup v. Delo, 513 U.S. 298, 327 (1995).  "Actual innocence" means factual innocence, not
20 merely legal insufficiency; a mere showing of reasonable doubt is not enough.  See Wood v. Hall,
21 130 F.3d 373, 379 (9th Cir. 1997).  Although Flournoy challenges the method by which the DNA
22 test results were admitted into evidence, he does not challenge the veracity or reliability of the
23 DNA tests themselves.  Thus, Flournoy has not demonstrated that he is actually innocent of the
24 crimes of which he has been convicted.  Flournoy's first claim for relief is procedurally barred and
25 is properly dismissed on that ground.

26     (b)  *Teague* Bar

27      Flournoy argues that under Melendez-Diaz v. Massachusetts, 127 S. Ct. 2527 (2009),
28 Rogala's testimony based upon Dutra's DNA reports violated the confrontation clause.  In

1  evaluating the merits of Flournoy's claim, the California Court of Appeal concluded the Supreme

2  Court's decision in Crawford v. Washington, 541 U.S. 36 (2004) did not negate the established

3  rule that experts can relate the information and sources upon which they rely in forming their

4  opinions.  The Court of Appeal concluded Dutra's reports were business records, not "testimonial

5  hearsay" within the meaning of Crawford.  [Lodgment No. 1, App. A, at 18-21.]  After Flournoy's

6  direct review was completed, the Supreme Court, in Melendez-Diaz, held that a certain type of

7  "certificate of analysis" was a testimonial statement and thus implicated the confrontation clause.

8  Flournoy argues the reasoning of Melendez-Diaz applies to the DNA report authored by Dutra,

9  and relied upon by Rogala, such that Rogala's testimony violated the confrontation clause.

10  Magistrate Judge Porter concluded that this Court was barred under Teague v. Lane, from

11  applying Melendez-Diaz to Flournoy's claim.[3]  In his objections, Flournoy argues Magistrate

12  Judge Porter erred in concluding Melendez-Diaz is a "new rule."  Flournoy cites a number of

13  federal and state cases applying Crawford's reasoning to DNA reports even before Melendez-Diaz

14  was decided.

15  As Magistrate Judge Porter discussed in the R&R,

> [A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government . . . .  To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

Teague, 489 U.S. at 301; see also Ponce v. Felker, 606 F.3d 596, 603 (9th Cir. 2010) (quoting Caspari v. Bohlen, 510 U.S. 383, 395 (1994)) ("A new rule is one 'over which reasonable jurists could disagree'.  Thus, the existence of conflicting decisions among other courts before the Supreme Court's articulation of a rule, or of a dissent accompanying that articulation, weighs against a conclusion that precedent compelled a decision.").  Before Melendez-Diaz was decided, federal appellate and state courts generally rejected the proposition that Crawford barred testimony about test results by individuals who did not perform the testing.  Although there were a handful of

---

[3] Flournoy objects that Magistrate Judge Porter *sua sponte* applied a Teague analysis to his confrontation clause claim. In the interests of judicial economy, however, the court may raise procedural bars *sua sponte*.  Webster v. Woodford, 369 F.3d 1062, 1067 (9th Cir. 2004).  Here, Melendez-Diaz was decided after the briefing was completed.  Therefore, Respondent cannot be faulted for failing to assert application of the decision is barred by Teague.

1  decision applying <u>Crawford</u> in the manner proposed by Flournoy herein, it cannot be said the
2  result was *dictated* by precedent.  In addition, the decision in <u>Melendez-Diaz</u> was split, with four
3  justices dissenting. Thus, the rule set forth therein is one over which reasonable jurists could
4  disagree.  Judge Porter correctly concluded that <u>Melendez-Diaz</u> was a new rule, decided after the
5  conclusion of Flournoy's direct appeal, and not applicable in this habeas corpus proceeding.

6      (c)  Merits Consideration

7      Even assuming the Court were to consider Flournoy's confrontation clause claim on the
8  merits, the California court's resolution of such claim was not contrary to or an unreasonable
9  application of clearly established federal law.  Determining whether a matter is "clearly
10 established federal law" is analogous to determining whether a Supreme Court decision constituted
11 a "new rule" for purposes of <u>Teague</u>.  <u>Ponce</u>, 606 F.3d at 604.  "If Supreme Court cases 'give no
12 clear answer to the question presented' the state court's decision cannot be an unreasonable
13 application of clearly established federal law." <u>Id</u>.

14     Here, <u>Crawford</u> did not clearly establish that an expert criminalist like Rogala could not
15 testify, and form opinions, based upon testing and reports prepared by others like Dutra.  The
16 decision in <u>Melendez-Diaz</u>, which shifted the manner in which the Supreme Court analyzed the
17 admissibility of statements by a non-testifying analyst, was not a foregone conclusion for the four
18 Justices who dissented from that decision.  To the contrary, the dissenting justices did not believe
19 the evidence at dispute in that case violated the confrontation clause.  Taking into consideration
20 Justice Thomas's additional comments in concurrence, that "the Confrontation Clause is
21 implicated by extrajudicial statements only insofar as they are contained in formalized testimonial
22 materials, such as affidavits, depositions, prior testimony, or confessions," it is doubtful whether a
23 majority of the Supreme Court would find admission of Rogala's testimony, based upon Dutra's
24 report, violated the confrontation clause.  The state court's decision rejecting Flournoy's claim
25 regarding the admissibility of Rogala's testimony was neither contrary to nor an unreasonable
26 application of clearly established federal law.

27 2.    <u>*Ineffective Assistance of Counsel*</u>

28     Flournoy argues his counsel was constitutionally ineffective when he failed to object to

1  Rogala's testimony regarding the DNA testing completed by Dutra. Flournoy also asserts, in his
2  traverse, that counsel was constitutionally ineffective for failing to call Dr. Laura Slaughter, an
3  expert apparently retained by defense counsel to review both the report of the Sexual Assault
4  Response Team ("SART") and the testimony of the Sexual Assault Nurse Examiner ("SANE")
5  Shirley Odum.
6        Magistrate Judge Porter correctly set forth the standard for reviewing claims of ineffective
7  assistance of counsel. To establish ineffective assistance of counsel, Flournoy must first establish
8  that his trial counsel's performance fell below an objective standard of reasonableness. Strickland
9  v. Washington, 466 U.S. 668, 687 (1984) "This requires a showing that counsel made errors so
10 serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
11 Amendment." Id. To satisfy the prejudice prong, Flournoy must demonstrate a reasonable
12 probability that the result of the proceeding would have been different absent the error. Id. at 694.
13 "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
14       (a)  Failure to Object to Rogala's Testimony
15       The California Court of Appeal denied Flournoy's claim that his counsel was
16 constitutionally ineffective, finding Rogala's testimony was admissible and did not violate the
17 confrontation clause. [Lodgement No. 1, App. A, at 21-22.] Magistrate Judge Porter concluded
18 that although Flournoy's counsel likely should have objected on confrontation clause grounds,
19 Flournoy had not shown prejudice. Significantly, at the time of trial, the weight of authority was
20 squarely against applying Crawford in this context.
21       In his objections, Flournoy argues his trial counsel should have objected to Rogala's
22 testimony insofar as it was based not only on Dutra's report but also on reports by Tammy Ballard
23 who prescreened the evidence collected by Sexual Assault Nurse Examiner Shirley Odum.
24 Flournoy poses a number of hypothetical questions he could have asked on cross-examination of
25 Ballard and Dutra regarding their processing of the evidence. Again, however, Flournoy cannot
26 show prejudice because there is no reason to believe the trial court would have sustained an
27 objection based upon the confrontation clause to exclude Rogala's testimony about Ballard's
28 preliminary examination and testing.

(b) Failure to Call Dr. Slaughter

For the first time in his Traverse, Flournoy raises a claim that counsel was constitutionally ineffective for failing to call Dr. Slaughter as a witness at trial. Upon review of the unexhausted claim, Magistrate Judge Porter concluded Flournoy's counsel made a tactical decision not to call Dr. Slaughter at trial. In his objections, Flournoy argues there were substantial discrepancies between the SART report and Odum's testimony, and requests the Court stay his petition to allow him to exhaust such claim. As Magistrate Judge Porter concluded, however, Dr. Slaughter's report itself did not rule out the likelihood that L.M. was raped.[4] Counsel made a tactical decision not to call Dr. Slaughter at the trial, and even if the decision was erroneous Petitioner has not demonstrated he was prejudiced by his counsel's performance. Petitioner is not entitled to relief on his claim.

3. *Admission of Cherrie Johnson and Deangeloa Wells' Testimony*

The trial court allowed L.M.'s employer, Cherrie Johnson, and L.M.'s aunt, Deangeloa Wells, to testify regarding statements L.M. made to them. Wells testified she spoke to L.M. shortly after she returned to Portland. When Wells pressed L.M. to tell her the truth, L.M. told Wells she had been in the apartment of a person she met at a bus stop and while she was lying down, this person rolled on top of her and raped her. [Lodgment No. 3, Vol. 4, at 534-35.] Johnson testified L.M. told her she had been raped and she felt uncomfortable being alone because Flournoy was out of jail. [Id. at 688-92.]

Flournoy argues the trial court's admission of this testimony, without adequate limiting instructions, violated his right to due process and rendered his trial fundamentally unfair. The California Court of Appeal rejected Flournoy's claim, concluding that under California law L.M.'s disclosure of the sexual assault to Wells was admissible for the nonhearsay purpose of establishing the fact that the disclosure was made and the circumstances under which it was made. With regard

---

[4] In his objections, Flournoy asks the Court to grant him a stay and abeyance to allow him the opportunity to exhaust this claim in the state courts. Flournoy's ineffective assistance claim based upon his counsel's failure to call Dr. Slaughter as a witness does not share a "common core of operative facts" with his other exhausted claims. Thus, even if the Court permitted Flournoy to dismiss that one claim in order to exhaust, it is not likely he could amend his petition to add an exhausted claim. King v. Ryan, 564 F.3d 1133, 11432 (9th Cir. 2009).

1  to Johnson's testimony, the Court of Appeal concluded the testimony was offered for the
2  nonhearsay purpose of showing L.M.'s state of mind – her fear of Flournoy – at the time she made
3  the statement. [Lodgment No. 1, App. A, at 27-28.]
4        As Magistrate Judge Porter explained in the R&R, federal habeas relief is not available for
5  alleged violations of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that federal
6  habeas relief is not available for an alleged error in the interpretation or the application of state
7  law); see also 28 U.S.C. § 2254(a). Thus, the question whether the evidence was properly
8  admitted under California law is not before this Court. Rather, this Court may only determine
9  whether the admission of the evidence violated Flournoy's due process right to a fair trial. To
10 establish this, Flournoy must show the admission of the evidence rendered his trial fundamentally
11 unfair. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 897 (9th Cir. 1996). Any prejudice that may have
12 occurred may be mitigated by the trial court's limiting instructions. Estelle, 502 U.S. at 75.
13       The trial court carefully evaluated the admissibility of Wells' and Johnson's testimony
14 about L.M.'s statements. The trial court also gave limiting instructions regarding the appropriate
15 purpose for which the jury could consider those statements. L.M. testified at trial and Flournoy
16 was able to cross-examine L.M. with regard to the statements she made to Wells and Johnson.
17 Flournoy has not demonstrated the state court's decision rejecting his due process claims was
18 contrary to or an unreasonable application of clearly established federal law.

19 *4.*    *Cumulative Error*

20       Finally, Flournoy claims the cumulative effect of the errors rendered his trial
21 fundamentally unfair. "Cumulative error applies where, although no single trial error examined in
22 isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has
23 still prejudiced a defendant." Jackson v. Brown, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting
24 Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000). Because the Court has found no
25 error occurred in Flournoy's trial, the state court's denial of Flournoy's cumulative error claim was
26 neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.
27 Williams, 529 U.S. at 412-13.
28

### *Certificate of Appealability*

On November 10, 2010, Flournoy filed an application for a certificate of appealability as to each of his claims for relief. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2253 to require a "certificate of appealability" for § 2254 cases on a claim-specific basis. The Supreme Court has elaborated on the application of this requirement, stating that "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy section 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) ("Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that Petitioner will not prevail.") Additionally, the Supreme Court has stated that a claim may also warrant a certificate of appealability when the "questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 (1983), overruled in part on other grounds, Lindh v. Murphy, 521 U.S. 320 (1997).

Here, the Court concludes reasonable jurists could find debatable the denial of Flournoy's confrontation clause claim and the related ineffective assistance of counsel claims. Therefore, the Court grants a certificate of appealability as to Claims 1 and 2 of the petition. The Court concludes the remainder of Flournoy's claims regarding the admission of tesitmony and cumulative error do not present questions "adequate to deserve encouragement to proceed further." The Court denies Flournoy's application for a certificate of appealability as to Claims 3-5.

///
///
///
///
///
///

## *Conclusion*

For the reasons set forth herein, the Court rejects Flournoy's objections and adopts in full Magistrate Judge Porter's R&R. The Court DENIES Flournoy's petition. The Court GRANTS Flournoy a certificate of appealability as to Claims 1 and 2 only.

**IT IS SO ORDERED**.

**DATED: December 3, 2010**

*/s/ Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge
United States District Court**